# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RONALD ROSCOE,** | ) | |
| **Movant/Defendant,** | ) | |
| **v.** | ) | **2:11-cr-37-JHH-RRA** |
| | | **2:13-cv-8006-JHH** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

The court has before it Movant Ronald Roscoe's Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed on March 21, 2013.  Pursuant to the court's orders of March 28, 2013 (Doc. # 2) and April 15, 2013 (Doc. # 4), the United States Government filed a Response (Doc. #5) in opposition to Roscoe's Section 2255 Motion on May 15, 2013.  In its response, the Government seeks to have the Motion to Vacate (Doc. #1) dismissed in its entirety, without an evidentiary hearing.[1]  (See Doc. #5 at 2, 33.)

Movant responded to the Government's opposition on June 7, 2013.  (Doc. #6.)

---

[1] The Government attached the following exhibits to its response: Affidavit of Randy Dempsey; Transcript of the Plea Hearing; Transcript of the Sentencing Hearing; Roscoe's opening brief on appeal; United States of America's Motion to Dismiss the Appeal; Roscoe's Reply brief on appeal; final order on appeal of the Eleventh Circuit.

Additionally, on July 8, 2013 Movant filed a Motion (Doc. #7) to Take Judicial Notice of the Supreme Court's Decision in <u>Descamps v. United States</u>.  The Government filed a Response (Doc. #8) to the Motion and Movant filed a Reply (Doc. #9).  The court granted the Motion (Doc. #7) to Take Judicial Notice, stating that it would address the additional argument made by Roscoe when the court addressed Roscoe's § 2255 petition.  (<u>See</u> Doc. #10.)

After careful consideration of all the argument presented by Roscoe and the Government, as well as the applicable law in this Circuit, the court concludes that Roscoe's Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is due to be dismissed in its entirety for the following reasons.

## I. Background

On February 2, 2011, A federal grand jury returned a one-count indictment against Ronald Roscoe, changing him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  On February 16, 2011 Roscoe appeared with defense counsel Scott Brower before United States Magistrate Judge Robert R. Armstrong, Jr., pleaded not guilty, and was remanded to the custody of the United States Marshall.  Later that month, Roscoe retained defense attorney Randy Dempsey to represent him.

## A.  Plea of Guilty

After Roscoe retained Dempsey as his attorney, Dempsey investigated Roscoe's criminal history and determined that he had one "adjudication" and two criminal convictions that potentially qualified as "crimes of violence" or "serious drug offenses" that could trigger the ACCA enhancement found in 18 U.S.C. § 924(e)(1). (See Aff. of Randy Dempsey ¶ 3.) Those three offenses were as follows:

(1) a November 5, 1999 youthful-offender adjudication by the Jefferson County, Alabama Circuit Court arising out of a first-degree robbery charge;

(2) a June 13, 2005 first-degree unlawful-possession-of marijuana conviction in the Jefferson County Circuit Court; and

(3) a June 13, 2005 murder conviction in the Jefferson County Circuit Court.

(Id.)  Dempsey reviewed the government's evidence against Roscoe.  (Id. ¶ 4.)  He determined that the government expected to present evidence at trial showing that, while Roscoe was being questioned by officers of the Birmingham, Alabama Police Department in December 2010, Roscoe shoved one of them and tried to flee.  (Id.) Subsequently, while wrestling with Roscoe, the officers found a semiautomatic pistol that the defendant had concealed in his clothing.  (See id.)

Dempsey met with Roscoe on several occasions and reviewed the case evidence and Roscoe's criminal history, including the adjudication and convictions described above.  (Id. ¶ 5.)  Dempsey and Roscoe discussed the advantages and

3

disadvantages of a plea agreement. (Id.)  Dempsey advised Roscoe that portions of his criminal history (i.e., the youthful-offender adjudication arising from the first-degree robbery charge, the marijuana conviction, and the murder conviction) could, if he was found guilty of the felon-in-possession charge through plea or at trial, qualify him for the ACCA enhancement.  (Id. ¶ 6.)  This, in turn, would result in prison sentence that could be as long as life in prison, and no less than 15 years.  (Id.)

Sometime later, Dempsey received a proposed plea agreement from the government.  (Id. ¶ 7.)  Dempsey discussed the entire proposed agreement with Roscoe and reviewed all of its terms with him.  (Id.)  Section I of the proposed agreement informed Roscoe that he could be imprisoned for no less than 15 years if he was determined to be an Armed Career Criminal:

## I.  MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), as charged in COUNT ONE, is:

a. Imprisonment for not more than 10 years (**Subject to provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e) - In the event that the defendant is determined to be an Armed Career Criminal, per 18 U.S.C. § 924(e), he shall be imprisoned for not

4

less that 15 years, and could be
imprisoned for life)

(Plea Agreement at 1-2.) Section IV contained language expressly limiting Roscoe's

right to appeal his conviction and sentence unless it was in excess of the applicable

statutory or guidelines maximum terms.  (Id. at 6-7.)  The plea agreement specifically

states as follows as it relates to this waiver:

### IV.   WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

**In consideration of the recommended disposition of this case, I, RONALD ROSCOE, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fine, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.**

**The defendant reserves the right to contest in an appeal or post-conviction proceeding either or both of the following:**

**(a)   Any sentence imposed in excess of the applicable statutory maximum sentence(s); and**

**(b)   Any sentence imposed in excess of the guideline sentencing range determined by the Court at the time**

5

**sentence is imposed.**

**The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.**

**I, RONALD ROSCOE, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

(Id.) (emphasis in original.)  Dempsey informed Roscoe that there was a chance that the appeal waiver could bar any appeal of the ACCA enhancement.  (Dempsey Aff. ¶ 7.)

Dempsey told Roscoe that, after reviewing the government's evidence, he believed that entering into the plea agreement would be in Roscoe's best interest.  (Id. ¶ 8.)  That being said, Dempsey also counseled Roscoe that only Roscoe could make the decision whether to take the plea offer, enter a blind plea, or proceed to trial.  (Id.) Roscoe accepted the plea offer.  (Id. ¶ 9.)  Roscoe signed and initialed the plea agreement in Dempsey's presence, and Dempsey returned it to the government.[2]  (Id.)

---

[2] Roscoe initialed the two pages of the agreement that contained the language regarding maximum punishment.  (Plea Agreement at 1-2.)  He also initialed the two pages that contained the language regarding the waiver of his right to appeal and post-conviction relief.  (Id. at 6-7.)

The government's attorney signed the agreement and then filed it into Court on March 25, 2011.

The plea hearing was help on March 29, 2011 before the court.  At the beginning of the hearing, the court placed Roscoe under oath.  (Plea Transcr. at 2-3.) The court then told Roscoe to interrupt the proceedings to ask questions if anything occurred during the hearing that he did not fully understand:

> **The Court:**  Mr. Roscoe, if anything is said here today that you do not fully understand or if anything takes place in this courtroom this morning that you do not fully understand, I want you to interrupt the proceedings.  Just ask me to stop the proceedings and ask me to clear the matter up for you or ask me to give you the opportunity to talk privately with Mr. Dempsey, your attorney, so that he can answer your questions and clear the matter up.  Do you understand that?
>
> **Roscoe:**     Yes, sir.

(Id. at 3.)

The court first addressed Dempsey regarding the plea agreement and Roscoe's understanding of that agreement.  Dempsey confirmed that the following: (1) that the agreement set forth "everything that [Dempsey was] aware of that [Roscoe was] relying upon at [that] time by way of a plea bargain or plea agreement"; (2) that Dempsey had ample time to fully discuss the plea agreement with Roscoe prior to

---

Roscoe also placed his signature directly below the language regarding the waiver.  (Id. at 7.)

7

Roscoe signing the agreement; (3) that Roscoe did not have any questions for Dempsey that he was unable to answer about the agreement's meaning or the way in which it would function; and (4) that Dempsey had fully discussed the agreement's appeal-waiver provision with Roscoe. (Id. at 5-6.)  Roscoe did not interrupt the court or dispute Dempsey's representations while he was speaking to the court about the plea agreement.  (See id.)

The court next addressed Roscoe, who confirmed that Dempsey had thoroughly discussed the terms of the plea agreement with him:

> **The Court:** . . . . I have here and you have there a written plea agreement that bears your signature on page 13. It also bears your signature on page 4 stipulating to certain facts that are set forth thereon that page, and also signed by you on page 7 waiving with certain limited exceptions your right to appeal the conviction and sentence that may be imposed in this case.
>
> Does that document which has been filed with the Court set forth everything that you are relying upon at this time by way of a plea bargain or plea agreement with the Government?
>
> **Roscoe:** Yes, sir.
>
> **The Court:** Before you signed the agreement, did you have sufficient opportunity to fully discuss it with Mr. Dempsey?
>
> **Roscoe:** Yes, sir.

8

> **The Court:** Did you have any questions of him with regard to the meaning of the agreement or how it might function that Mr. Dempsey was not able to answer to your satisfaction?
>
> **Roscoe:**      No, sir.
>
> . . . .
>
> **The Court:** Has anyone promised you anything or threatened you in any way to encourage you to enter this plea of guilty?
>
> **Roscoe:**      No, sir.

(Id. at 6-7.)   The court continued speaking to Roscoe and described the maximum

criminal penalties that he could face by pleading guilty, and Roscoe stated that he

understood those penalties:

> **The Court:** Mr. Roscoe, I am obligated at the time that I take a plea of guilty from any defendant to set forth or outline for the defendant the absolute maximum penalty that could be imposed for the offense, and I'm about to do that. I'm about to do that not to intimidate you or to suggest that I'm thinking in terms of anything like that. I have no idea what sentence is going to be appropriate. But I do have the obligation to at least inform you of that fact. Do you understand?
>
> **Roscoe:**      Yes, sir.
>
> **The Court:** The maximum sentence that could be imposed as reflected in the plea agreement would be a fine of not more than $250,000 and a custodial sentence of not more than 10 years, any custodial sentence to be followed by a

9

term of not more that [sic] three years supervised release. Now, that's the normal maximum penalty. However, if you have what they refer to as two qualifying convictions committed at the same time of aggravated offenses or heavy drug matters or what have you – I'm sure you have talked that over with him – but if you have had two or more of those, then the maximum penalty changes materially as set out there in the plea agreement.

In other words, the custodial sentence would be not less than 15 years and not more than life, with a not-more-than 5-year term of supervised release, with the fine staying the same. Do you understand that?

**Roscoe:**     Yes, sir.

**The Court:** And that's fully set forth in the plea agreement.  Did you understand that when you discussed it with Mr. Dempsey?

**Roscoe:**     Yes, sir.

**The Court:** Is there anything that prevents you from understanding anything that I'm saying to you at this time or that prevents you from understanding anything that Mr. Dempsey says to you when he discusses this matter with you or that prevents you from understanding the nature of the proceedings here today or the charges preferred [sic] against you? Is there anything that prevents you from understanding any of that?[3]

**Roscoe:** No, sir.

(Id. at 7-9.)

_____

[3] The court asked Roscoe whether he had taken any drugs or medication within the past 72 hours - he had only taken medication for his eye.  (Plea Transcr. at 9.)

At this point, the court explained the indictment to Roscoe and ensured that Dempsey had been given ample time to fully investigate the charges and generally counsel Roscoe.  (Id. at 9-10.)  The court also explained the elements of the section 922(g)(1) charge.  (Id. at 10-11.)  The court then had the government outline the facts that it expected to prove if there was a trial of the case.   (Id. at 11-13.)  When the government finished outlining the facts, Roscoe agreed that they were substantially correct.  (Id. at 13.)  Roscoe acknowledged that he was not required to plead guilty to the 922(g)(1) charge, and understood that he was free to withdraw his plea and maintain his innocence.  (Id.)  However, he stated that he still wanted to plead guilty, and the court accepted his guilty plea and set the matter for sentencing.  (Id. at 13-14.)

**B.  Sentencing**

Before the sentencing hearing, the Probation Office issued a Presentence Investigation Report ("PSR") on May 17, 2011.  The PSR listed Roscoe's three prior adjudications/convictions that qualified him as an Armed Career Criminal under 18 U.S.C. § 924(e).  The PSR concluded that Roscoe was due to receive a sentence of between 15 years and life in prison.

Roscoe remained represented by Dempsey during the sentencing phase, and Roscoe objected to the PSR for a variety of reasons.  Specifically, Roscoe argued that the youthful-offender adjudication and the marijuana conviction were not felonies

that qualified him for the ACCA enhancement.  The government opposed these objections.

A sentencing hearing was held before the court on June 30, 2011.  At sentencing, the court overruled Roscoe's objections to the PSR, applied the ACCA enhancement, and sentenced Roscoe to 180 months imprisonment.[4]  (Sentencing Trans.)  After the hearing, the court entered a final judgment memorializing the 180-month sentence.

## C.  Direct Appeal

Dempsey represented Roscoe on the direct appeal of his sentence to the Eleventh Circuit.   Roscoe specifically argued that the court should not have applied of the ACCA enhancement.  (See Govt Exh. 4.) The  government responded with a motion to dismiss, arguing that Roscoe's appeal was barred by the appeal-waiver provision in his plea agreement. (See Govt Exh. 5.)

Roscoe replied by arguing that he had not knowingly and voluntarily waived his right to appeal the application of the ACCA enhancement because the trial court had not discussed with him the "full implications" of the waiver provision. (See Govt

---

[4] Although the court stated during the sentencing hearing that it believed that Roscoe could raise the application of the ACCA enhancement on appeal notwithstanding the waiver provision, (Sentencing Transcr. at 7-8, 14-15), the Eleventh Circuit clearly disagreed and overruled the court's interpretation of the appeal waiver when it dismissed Roscoe's appeal of the ACCA enhancement based on the appeal waiver alone.  (See Govt Exh. 7.)

Exh. 6 at 8.) Roscoe also argued that, because both Dempsey and the trial court believed that he had not waived his right to appeal his sentence, it was clear that Roscoe had believed the same, and therefore had not knowingly and voluntarily waived his appellate rights.  (Id. at 9-11.)

The Eleventh Circuit granted the government's motion to dismiss pursuant to the appeal waiver.  United States v. Roscoe, No. 11-13233-BB (11th Cir. Jan. 18, 2012). (Govt Exh. 7.)   Roscoe moved to reconsider this order, but the Eleventh Circuit denied his motion.

**D.  Section 2255 Petition**

On March 21, 2013, Roscoe timely filed a petition for relief under 28 U.S.C. § 2255.  (Doc. #1.)  Roscoe's petition raises four arguments.  The first three are claims of ineffective assistance of counsel: (1) that the appeal waiver in the plea agreement was entered into "unknowingly, involuntarily, and unintelligently due to counsel's ineffective assistance during the plea stage"; (2) that Dempsey's ineffectiveness in allowing Roscoe to unknowingly agree to the appeal waiver created a conflict of interest, and that Dempsey was ineffective for failing to withdraw as counsel after sentencing so that new, conflict-free counsel could have been appointed; and (3) that Dempsey was ineffective on appeal for "failing to raise the 'miscarriage of justice,' 'jurisdictional,' and 'ineffective assistance' exceptions to the appeal

13

waivers in his opening brief or otherwise." (Id. at 2.) The fourth argument raised by Roscoe is a one substantive claim of his actual innocence: that Roscoe was "actually innocent of the ACCA enhancement and because the government failed to meet its burden in proving that there was three qualifying predicate offenses the court lacked jurisdiction to impose the statutory enhancement." (Id.) Additionally, Roscoe added a fifth argument to his petition regarding his claim of "actual innocence" in a Motion to Take Judicial Notice of the Supreme Court's Decision in Descamps v. United States. (See Docs. # 7 & 10.) The government responded to each argument and argues that Roscoe's petition (Doc. #1) is due to be dismissed in its entirety. (See Docs. 5 & 8.)

## II. Discussion

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1. It is well settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

14

## A.  Roscoe's Claims of Ineffective Assistance of Counsel Fail.

Ineffective assistance of counsel claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims. Both prongs of the test must be met for the petitioner to succeed.  Id. at 687.  First, Roscoe  must show that counsel's performance was deficient, i.e., outside the range of professionally competent assistance.  Id.  The proper measure of an attorney's performance is "reasonableness under prevailing professional norms."  Id. at 688. Unless the petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he cannot show that counsel's performance was constitutionally deficient. Id. at 689.  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  [The court asks] only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992); see also Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance").[5]

---

[5] In fact, the Supreme Court has warned against second-guessing professional judgments made by counsel: "Judicial scrutiny of counsel's performance must be highly deferential," and court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct hte

Second, Roscoe must establish prejudice, such that there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 687; Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Because the petitioner must meet both parts of the test, the court does not need to address the performance prong if the petitioner cannot meet the prejudice prong, and vice versa. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

The Supreme Court has held that Strickland's two-part test also applies to "challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). Hill held that to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The Eleventh Circuit has held that "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between

---

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

accepting the prosecution's offer and going to trial." <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir.1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." <u>Id.</u>

### 1. Roscoe's Plea was Knowing and Voluntary.

Roscoe contends that he did not knowingly, voluntarily and intelligently agree to the plea agreement's waiver provision because Dempsey did not advise him that the waiver would foreclose an appeal of the ACCA enhancement. (Doc. #1 at 4-5.) Instead, Roscoe swears that Dempsey told him, as he was executing the plea agreement, that the waiver provision would not prevent him from appealing the enhancement.[6] (<u>Id.</u> at 5.) Roscoe maintains that had he known he was waiving his right to appeal the application of the ACCA enhancement, he would have insisted on going to trial or renegotiated another agreement "that clearly reserved his right to appeal the ACCA enhancement if applied at sentencing." (<u>Id.</u> at 7.) He admits that he "would have most likely received the same exact 15-year sentence had he went to trial, but would have preserved his right to appeal the ACCA enhancement, and

---

[6] Demsey's affidavit states that he told Roscoe that there was a chance that the appeal waiver could bar any appeal of the ACCA enhancement. (Depmsey Aff. ¶ 7.)

17

would have had a chance of winning the case, because you never know what a jury will do." (Id. at 8.) (emphasis omitted).  He also theorizes that the government would have agreed to a plea agreement permitting an appeal of an ACCA enhancement. (Id.)

Dempsey's alleged incorrect advice does not necessarily amount to ineffective assistance of counsel under Strickland.  First, Roscoe failed to establish that Dempsey's performance was deficient as a matter of law in that his representation did not fall below an objective standard of reasonableness.  Hill, 474 U.S. at 57.   As explained above, in a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Id. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).   Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).   Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

Here, the record confirms that Roscoe was well aware of the potential application of the ACCA enhancement, as well as the waiver provision contained in the plea agreement.  After investigating Roscoe's case and before any presentation

18

of a plea agreement, Dempsey advised Roscoe that if he was found guilty of the felon-in-possession charge through a plea or a trial, his criminal history could qualify him for the ACCA enhancement with a 15 year mandatory minimum prison sentence. (Roscoe Aff. ¶ 6.)  Once the government gave Roscoe a plea agreement, Dempsey discussed the waiver provision with Roscoe, and although Dempsey claims that he informed Roscoe that there was a chance it could bar any appeal of the ACCA enhancement, Roscoe contends that Dempsey told him that he could still appeal the enhancement.  (Id. ¶ 7; Doc. #1 at 5.)

With regard to the plea agreement, Roscoe initialed the portion of the plea agreement disclosing that he was facing potential application of the enhancement, and signed and initialed the portion of the plea agreement setting out the waiver.  The waiver did have two exceptions – neither of which clearly set out a specific exception for an appeal of the ACCA enhancement, although Roscoe contends he was operating under the misconception that he could.  With regard to the plea hearing, the court expressly informed Roscoe about the existence of the waiver and the potential for a 15-year maximum mandatory sentence.  (Plea Transcr. at 6, 8.)  Roscoe agreed, under oath, that the written plea agreement "set forth everything that [he was] relying upon at this time by way of a plea bargain or plea agreement with the Government."  (Id. at 6.)  Roscoe did not volunteer any understanding that he believed that he could

19

appeal the application of the ACCA enhancement, although the plain language of the appeal waiver did not include an explicit exception regarding any enhancement.  He also acknowledged that he was not required to plead guilty, but nevertheless wanted to do so.  (Id. at 13.)

Additionally, although Dempsey's alleged advice regarding the appeal waiver turned out to be incorrect, that advice was not outside the range of competent advice. See Hill, 474 U.S. at 56-57.  Indeed, even the court opined that the exceptions to the appeal waiver most likely applied to the application of the ACCA enhancement. (Sentencing Transcr. at 7-8, 14-15.)   However, the Eleventh Circuit disagreed with this interpretation and held that the appeal waiver applied to the ACCA enhancement. Dempsey's incorrect advice did not render his performance deficient as a matter of law under Strickland.

In the alternative, regardless of whether Dempsey's performance in advising Roscoe was deficient, Roscoe cannot show that he was prejudiced under Strickland. Roscoe's allegation of prejudice is simply a self-serving, speculative assertions made with the benefit of 20/20 hindsight.  Such allegations are insufficient in this circuit to establish prejudice under Strickland.  See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).  Given Roscoe's admissions at the plea hearing, his awareness of the appeal waiver and the potential applicability of the ACCA enhancement, and the

20

risks of going to trial, all of which were discussed with him by Dempsey before he pled guilty, Roscoe's after-the-fact allegation of his desire to go to trial, enter a blind plea, or negotiate a different plea agreement with the government, without more, is insufficient to establish that but for Dempsey's alleged advice, he would have not accepted the plea offer.  Id.; see also Cook v. United States, 189 Fed. Appx. 927, 931 (11th Cir. 2006).

### 2.  Dempsey did not operate under a conflict of interest.

Roscoe argues that because Dempsey gave him incorrect advice regarding the appeal waiver, Dempsey was operating under a conflict of interest when he litigated Roscoe's appeal.  (Doc. #1 at 10.)  To obtain relief on the grounds that his attorney operated under a conflict of interest, Roscoe must show two things: (1) that his attorney had an actual conflict of interest and (2) that the conflict "adversely affected" his attorney's performance.  Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001).  Roscoe failed to establish either element.

First, there is no evidence in the record that Dempsey operated under a conflict of interest.  Roscoe's premise for his entire conflict of interest argument is based on the assumption that Dempsey's performance was somehow deficient. (Doc. #1 at 10.) However, the court has already found that Dempsey's performance, although allegedly not perfect, was not deficient under Strickland.  See supra at 18-20.   As

21

such his argument that Dempsey somehow operated under a conflict of interest on appeal necessarily fails.  And even if he did, as recounted above, Roscoe was not "adversely affected" or prejudiced by any alleged deficient performance.  See supra at 20-21.

### 3.  Dempsey did not provide ineffective assistance on appeal.

Roscoe argues that Dempsey was ineffective for not addressing the viability of the plea agreement's waiver provision in his opening brief on appeal.  (Doc. #1 at 11.)  Roscoe contends that this alleged mistake prejudices him by allowing the government to move "straight away for dismissal."[7]  (Id.)    More substantively, Roscoe also argues that the government did not prove that he had three predicate felonies needed to qualify him for the ACCA enhancement, and that Dempsey was deficient by not arguing the "miscarriage-of-justice" and "jurisdictional" exceptions to the appeal wavier.  (Id. at 13-14.)  Both arguments fail.

The first argument fails for obvious reasons.  Most glaringly, it is totally speculative whether the Eleventh Circuit would have considered his ACCA argument on the merits had Dempsey argued that the appeal waiver did not apply in his opening brief.  Dempsey competently argued such in his reply brief, after the government filed

---

[7] He surmises that had Dempsey addressed the waiver in his opening brief, "it is likely that this alone would have been sufficient to have the petitioner's ACCA argument heard on its merits."  (Doc. #1 at 12.)

its motion to dismiss the appeal based on the waiver.   The Eleventh Circuit necessarily considered this argument and clearly rejected it when it found that the waiver applied to Roscoe's appeal of his sentence.   The court affords Dempsey's performance deference, as an experienced trial and appellate attorney, and indulges a strong presumption that his performance was reasonable.  See Strickland, 466 U.S. at 689; Chandler, 218 F.3d at 1316.  Dempsey's performance on appeal was not deficient based upon the order of his arguments.

Even if Dempsey had been deficient in the ordering of the arguments (Which he was not), Roscoe did not suffer any prejudice.  Dempsey argued, at length, that the appeal waiver did not apply in Roscoe's reply brief, and the Eleventh Circuit had ample opportunity to consider the argument.  Roscoe's speculation that the order of the arguments somehow affected the way the Eleventh Circuit viewed the arguments is a far cry from the evidence required to establish that he suffered any prejudice.

Roscoe's second argument similarly fails.  Dempsey's performance on appeal was not deficient because he failed to argue the "miscarriage-of-justice" and "jurisdiction" exceptions to the appeal waiver.   Any argument that they did apply would have been meritless.  See United States v. Steed, 548 F.3d 961, 979 (11th Cir. 2008); United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006).  Dempsey's performance cannot be found deficient for failing to argue a meritless argument.

23

Again, even if Dempsey had been deficient in not making these arguments, Roscoe did not establish that he suffered any prejudice. Roscoe does not dispute the existence of the youthful-offender adjudication and the marijuana conviction, and he admitted to those facts for purposes of sentencing. Thus, this argument would not have invalidated the appeal waiver and Roscoe cannot establish prejudice.

**B. Roscoe's Claim of Actual Innocence Fails.**

Roscoe makes two arguments of "actual innocence." Roscoe argues that the ACCA enhancement was incorrectly applied to him and that, because the government did not prove that he committed three predicate offenses that could qualify him for the enhancement, the court lacked jurisdiction to impose it. (Doc. 1 at 15.) Roscoe also argues that under Descamps v. United States , 133 S. Ct. 2276 (2013), he is "actually innocent of the Armed Career Criminal Act" and its 15-year minimum mandatory sentence because his youthful offender adjudication does not qualify as an ACCA predicate.[8] (Doc. # 7 at 1-4; Doc. #9 at 1-3.) Both arguments fail.

---

[8] In Descamps, the defendant was convicted of possession of a firearm by a convicted felon and sentenced under the ACCA, based in part upon his prior burglary conviction under California law. Descamps involved application of the "residual clause" of the ACCA, § 924(e)(2)(B)(ii), which defines "violent felony" as "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The California burglary statute did not include an element of the generic crime of burglary; it did not require that a burglar "enter or remain unlawfully in a building." The Supreme Court held that federal sentencing courts may not apply the "modified categorical approach" (i.e., consulting a limited class of documents, such as indictments and jury instructions) to sentencing under ACCA's "residual clause" when the state

To demonstrate actual innocence, a petitioner mut show "factual innocence, not mere legal insufficiency."  <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998). Throughout this entire criminal case, as recounted above, Roscoe  has never once objected to <u>the existence</u> of his youthful-offender adjudication and/or his marijuana conviction.  Instead, he objects to the effect of those convictions with regard to his ACCA status.  His failure to object to their existence equates to an admission of the convictions.  <u>See</u> <u>United States v. Bennett</u>, 472 F.3d 825, 833-34 (11th Cir. 2006); <u>United States v. Wade</u>, 458 F.3d 1273, 1277 (11th Cir. 2006) (stating "[i]t is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes").  Because that admission establishes them as facts, the court properly used them as predicate offenses during sentencing.  <u>Id.</u>

Additionally, Roscoe's "actual innocence" argument fails because a § 2255 petition is not the "appropriate vehicle for determining whether a conviction later used to enhance a federal sentence was unconstitutionally obtained."   <u>Daniels v. United States</u>, 532 U.S. 374, 381 (2001).  By the time of sentencing under the ACCA, a prior conviction that has not been set aside on direct or collateral review is

_____

crime of which the defendant was convicted has a single, indivisible set of elements. 133 S.Ct. at 2281–82.

"presumably valid and may be used to enhance the federal sentence."  Id. at 382.

"The presumption of validity that attached to a prior conviction at the time of

sentencing is conclusive, and the defendant may not collaterally attack his prior

conviction though a motion under § 2255."[9]  Id.   For this separate reason, Roscoe's

argument fails.

Roscoe's argument regarding Decamps v. United States is similarly

unpersuasive.  Descamps was decided on June 20, 2013, approximately two years

after Roscoe was sentenced by this court.  The Supreme Court has unequivocally

stated that "a new rule is not made retroactive to cases on collateral review unless the

Supreme Court holds it to be retroactive."  Tyler v. Cain, 533 U.S. 656, 663 (2001).

The Supreme Court has not declared its decision in Descamps to be retroactively

applicable on collateral review, nor has the court found any cases applying Descamps

retroactively to cases on collateral review.   Therefore, the court refuses to do so here.

---

[9] The Daniels court reasoned:

> [A] defendant generally has ample opportunity to obtain
> constitutional review of a state conviction.  But once the "door" to
> such review "has been closed," by the defendant himself — either
> because he failed to pursue otherwise available remedies or
> because he failed to prove a constitutional violation – the
> conviction becomes final and the defendant is not entitled to
> another bite at the apple simply because the conviction is later used
> to enhance another sentence.

532 U.S. at 383.

## III.  Conclusion

For all the foregoing reasons, Roscoe's Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence is due to be denied.  A separate order will be entered dismissing the case in its entirety.

**DONE** this the ___16th___ day of October, 2013.


_____
SENIOR UNITED STATES DISTRICT JUDGE

27